ORDER AND JUDGMENT **
McWILLIAMS, Senior Circuit Judge.
Kenna Rae Mercer (“Mercer”) enrolled in a graduate program at the University of Northern Colorado (“UNC”) in the fall of 1993. In March, 1996, she was dismissed from that program. As a result of her dismissal from the program, Mercer, pursuant to 42 U.S.C. § 1983, brought suit on June 11,1996, in the United States District Court for the District of Colorado. The named defendants were the Board of Trustees for UNC, who were not identified by name, Janice Martin, Rik D’Amato, Ellis Copeland, Judith Praul, and John and Jane Doe, employees of UNC.
In her complaint, Mercer identified the defendants and under the heading “General Allegations,” set forth in great detail a chronology of the problems she had at UNC. Mercer then asserted eight claims for relief. The first claim for relief was against all defendants for deprivation of a liberty interest without due process of law pursuant to 42 U.S.C. § 1983. A second claim for relief was against the Board of Trustees for deprivation of a property interest pursuant to 42 U.S.C. § 1983. The third claim for relief was against all defendants and alleged a conspiracy pursuant to 42 U.S.C. § 1983. The fourth claim for relief was a pendent state claim against Martin for defamation. 28 U.S.C. § 1367. The fifth claim was also a pendent claim against the Board of Trustees for breach of contract. The sixth claim for relief was against Martin “in her individual capacity for outrageous conduct.” The seventh claim for relief was against Martin, Copeland, D’Amato and Praul in their individual capacities and John and Jane Doe for tor- *915 tious interference with a contractual relationship. The eighth claim for relief was against Martin, Copeland, D’Amato and Praul for “conspiracy.”
All defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6). On September 13, 1996, Mercer filed an amended complaint in which she again alleged the eight claims for relief previously pled, but indicated that she only sought equitable relief from the Board of Trustees (not monetary damages) and that the individual defendants were being sued only in their individual capacities. On January 22, 1997, all parties consented to the dismissal of Praul as a defendant. Thereafter, on March 13, 1997, Martin filed a renewed motion to dismiss and for summary judgment, and, on April 4, 1997, the other defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b).
After oral argument, the district court on June 15, 1998, granted the defendants’ motions for summary judgment as to Mercer’s first claim for relief, i.e., deprivation of a liberty interest without due process of law under 42 U.S.C. § 1983, and also on Mercer’s fourth claim for relief against Martin for defamation. A jury trial on Mercer’s six remaining claims began on June 15, 1998. After Mercer concluded her presentation of evidence, the district court granted the Board of Trustees’ motion under Fed. R Civ. P. 50 and dismissed UNC from the case. The jury thereafter found for the defendants on all claims except Mercer’s seventh claim against Martin for tortious interference with a contract, and on that claim the jury awarded Martin $7,500.00 in damages. On June 30, 1998, Martin filed a motion for judgment n.o.v. Almost two years later, the district court on March 29, 2000, granted Martin’s motion and entered judgment in favor of all defendants on all claims. Mercer appeals that judgment.
On appeal, Mercer in her brief sets forth five issues to be resolved: (1) whether the district court erred in granting summary judgment on her defamation claim (fourth claim); (2) whether the district court erred in granting summary judgment on her deprivation of liberty interest (first claim); (3) whether the form of verdict on her procedural due process claim was “accurate;” (4) whether the jury’s award of only $7,500.00 for tortious interference with a contract (seventh claim) was supported by the evidence, or was it inadequate; and (5) whether the district court erred in granting Martin’s post-trial motion for judgment n.o.v. for failure to comply with the Colorado Governmental Immunity Act.
At the outset we note that we are here concerned with only three of the defendants named in the complaint, i.e., Martin, D’Amato and Copeland. The Board of Trustees for UNC and Praul were dismissed by the district court, and on appeal there is no challenge to such dismissals. John and Jane Doe, named in the complaint as defendants, are still John and Jane Doe, and have not been further identified. So, we are only concerned with defendants Martin, D’Amato and Copeland.
Counsel first argues that the district court erred in granting Martin summary judgment on Mercer’s fourth claim for relief, which was a defamation claim under state law against Martin only. This claim was based on the fact that Martin, who was Mercer’s first faculty advisor, had accused Mercer of plagiarism in her presentation of a so-called “resource guide” paper. In granting Martin summary judgment on the defamation claim, the district court held that, on the evidence before it, the “accusation” of plagiarism was true and that Martin “did not ‘publish’ the accusation within the meaning of the law of defamation.” In this latter connection, the *916 district court noted that the charge of plagiarism was not circulated “to anyone beyond the Psychology faculty,” and that circulation of a statement within an institution or agency does not, by itself, constitute publication, citing Asbill v. Housing Auth. of Choctaw Nation, 726 F.2d 1499, 1503 (10th Cir.1984). We are in general accord with the district court’s analysis of this particular matter.
Counsel next argues that the district court erred in granting summary judgment for Martin, D’Amato and Copeland on Mercer’s first claim for relief. In her first claim, Mercer alleged that the defendants acting under the color of state law deprived her of constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution by “impugning ... [her] honesty and integrity by accusing her of plagiarism,” which accusations, she said, were false. In connection with this particular claim, the district court concluded, as it did in connection with Mercer’s fourth claim for relief against Martin for defamation, that, on the record before it, Mercer had plagiarized portions of her “resource guide” paper and that accordingly, Martin’s accusation of plagiarism was not false nor had there been any “publication” thereof, again citing Asbill. Again, we are in general accord with the district courts analysis of this matter.
In her “Statement of the Issues” at the beginning of her brief, counsel suggests that the form of verdict submitted to the jury in connection with “Mercer’s Procedural Due Process Claim” was “not accurate.” Mercer has not indicated with any degree of specificity the “inaccuracy” in the verdict form. There is a suggestion • that the district court erred in holding that Mercer’s termination from the program was for “academic” reasons, as opposed to “behavioral” reasons, and therefore, according to counsel, Mercer was entitled to “more due process” than she would otherwise be entitled to. How much more “due process” is conjectural. Be that as it may, we are not inclined to further speculate on this particular matter.
Counsel next asserts that the jury’s award of only $7,500.00 against Martin on Mercer’s claim of tortious interference with her “contractual relationship” was inadequate and not supported by the record. We disagree. A jury’s award of damages should not be overturned on appeal “unless it is clearly erroneous and there is no evidence to support the award.” Greene v. Safeway Stores, Inc., 210 F.3d 1237, 1245 (10th Cir.2000). The amount of damages was a jury question and in this regard the jury was not required to believe Mercer’s testimony as to the extent of her damages.
As indicated, on June 30, 1998, Martin filed a motion for judgment n.o.v. under Fed.R.Civ.P. §§ 12(b)(1) and 50(b) alleging that Mercer had failed to comply with the Colorado Governmental Immunity Act (“Act”), C.R.S. § 24-10-101, et seq. That Act reads, in part, as follows:
Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.
C.R.S. § 24-10-109(l)(2000).
Martin stated in her motion that Mercer had not filed her “notice of claim” until *917 January 12,1996, that Mercer had “discovered her injury” within the meaning of the Act no later than June 20, 1995, and that Mercer’s notice was not filed within 180 days after such discovery. Mercer filed a response to Martin’s motion, alleging that the 180 day provision of the Act did not commence to run on June 20, 1995, but later, possibly in August, 1995, and that the notice was filed within 180 days after her discovery of “tortious interference,” which, as she indicated, was, at the earliest, around the end of August, 1995.
In Martin’s motion for judgment n.o.v., mention is made of a “letter dated June 16, 1995, which would constitute interference with plaintiff’s contract with the University of Northern Colorado.” In this regard, it appears that on June 16, 1995, Martin wrote a memorandum, distributed to the School Psychology Faculty, concerning Mercer. In that memorandum, Martin stated that she had “continued concerns about Ms. Kenna Mercer’s behavior as a school psychology practicum student.” Martin then listed her several “concerns,” one of which was related to “A District 6 Resource Guide that she turned in as her own work.” Immediately after that statement, Martin wrote as follows: “(This is plagiarism.).” In support of Martin’s motion for judgment n.o.v., counsel argues that no later than June 20, 1995, Mercer became aware of the June 16 letter by Martin which would trigger the 180 day period prescribed by C.R.S. § 24-10-109. As indicated, Mercer’s notice of intent was not filed until January 12, 1996, well beyond 180 days from June 20,1995.
In her response to Martin’s motion for judgment n.o.v., Mercer alleged that she did not become aware of the June 16 letter until August, 1995, and did not “review” it until September 1,1995, and that therefore her “notice” filed on January 12, 1996, was timely.
Some time later, the district court, on March 29, 2000, entered an order granting Martin’s motion for judgment n.o.v. Apparently that order was entered on the basis of the motion and response thereto, without oral argument. In so doing, the district court noted that “there is no dispute that the alleged tortuous [sic] interference arose from a June 15, 1995, memorandum authored by Martin accusing plaintiff of plagiarism and other wrongs.” The district court then went on to state that “plaintiffs own verified complaint establishes that she knew of Martin’s charges against her no later than June 20, 1995,” and that January 12, 1996, was more than 180 days later than June 20, 1995.[1] In so doing, the district court rejected Mercer’s suggestion that the notice period did not begin to run until she discovered the ultimate consequences of Martin’s tortious acts, namely either when she received notice of the termination of her degree program in March, 1996, or, at the earliest, when she actually received a copy of the June 16 memorandum in August of 1995. The district court noted that the Act itself ties the 180 days to the “date of discovery *918 of the injury,” but concluded that under Colorado law, an aggrieved party may not wait to file notice until all the elements of the claim mature and the 180 day period begins to run when a claimant knows of, or through the exercise of reasonable diligence should have known of, or discovered, the wrongful act, citing Trinity Broadcasting of Denver, Inc. v. City of Westminster, 848 P.2d 916, 928 (Colo.1993).
C.R.S. § 24-10-109 requires any person claiming to have suffered an injury as a result of a tort committed by a public employee committed in the course of her public employment, to file notice of her claim within 180 days of the date of discovery of the injury. The burden of proof is on the plaintiff to show compliance with the Act’s notice requirement and a failure to substantially comply with the notice requirement is a “complete defense____” State Personnel Board v. Lloyd, 752 P.2d 559, 562 (Colo.1988). As the district court indicated in its grant of Martin’s motion for judgment n.o.v., the district court had previously deferred ruling on pretrial motions to dismiss for failure to comply with the notice requirements of the Act until after trial.
In considering this particular matter, it should be emphasized that we are only concerned with Mercer’s seventh claim for relief,, i.e., a state claim for tortious interference with Mercer’s contractual relationship with UNC. In that claim for relief, Mercer alleged that Martin wantonly and intentionally interfered with UNC’s performance of a contract she had for “matriculation through the Ed. S. program at the University of Northern Colorado.” As we understand it, the parties agree that Martin’s memorandum of June 16, 1995, wherein she accused Mercer of several improprieties, including that of plagiarism, constituted, if untrue, “tortious interference” with Mercer’s contractual relationship with UNC. Accordingly, Mercer’s meeting with Praul and Copeland on June 20,1995, becomes critical.
As we understand it, at the meeting of June 20, 1995, Mercer became fully aware of Martin’s various complaints about her school performance, including the accusation of plagiarism. Accordingly, the legal “injury” was discovered by Mercer no later than June 20, 1995, when she met with Copeland and Praul. On that occasion, Mercer became fully aware of the fact that Martin, in her letter of June 16, 1995, accused her of plagiarism and circulated the letter to members of the school faculty. From our reading of the record, which includes the allegations contained in Martin’s verified complaints, the June 20 meeting definitely involved, inter alia, a discussion concerning Martin’s accusation of plagiarism, which the district court held triggered the notice requirement in the Act. January 12, 1996, is more than 180 days from June 20, 1995. In such circumstance, the district court, in our view, was justified in concluding that the notice requirements of the Act had not been met. In sum, on this particular matter we are not inclined to disturb the district court’s understanding of Colorado law.
Judgment affirmed.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

. Paragraphs 38 and 39 of Mercer’s verified complaint reads as follows:
38. On, or about, June 16, 1995, Defendant Copeland telephoned Plaintiff to inform her of a meeting between himself, Plaintiff and Defendant Praul, on June 20, 1995. During that telephone conversation Plaintiff was informed that Defendant Martin had accused her of plagiarism. In fact, Plaintiff had not plagiarized any work, and Defendant Martin either knew, or recklessly disregarded the truth, of Plaintiff’s innocence of this allegation.
39. On, or about, June 20, 1995, Plaintiff met with Defendant Copeland and Defendant Praul. Discussed was Plaintiff’s concerns regarding her grade in PPSY 680 and the plagiarism charges. During this meeting, Plaintiff was told that she had wrongly created a “dual relationship” with Defendant Martin.